# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 23-CV-61085-SCOLA/GOODMAN

ADIDAS AG, ET AL.,

      Plaintiffs,

v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,",

      Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON PLAINTIFFS'
## MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS

In this trademark infringement action, Plaintiffs, adidas AG, adidas International

Marketing B.V., and adidas America, Inc. (collectively, "Plaintiffs") filed a motion for final

default judgment against Defendants, the Individuals, Business Entities, and

Unincorporated Associations identified on Schedule "A" (collectively, "Defendants").

[ECF No. 45]. Defendants have not filed a response to Plaintiffs' motion and the response

deadline has now expired.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the

Undersigned "for either an order or a report and recommendations, consistent with 28

U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate

Judge Rules." [ECF No. 46]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant** the Motion [ECF No. 45].

## I.    Background

Plaintiffs filed a four-count Amended Complaint alleging trademark infringement and counterfeiting pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114, (Count I); false designation of origin pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (Count II); common law unfair competition, (Count III); and common law trademark infringement, (Count IV). [ECF No. 18]. The Amended Complaint alleges that Defendants are "promoting, advertising, distributing, offering for sale, and/or selling goods" using Plaintiffs' adidas Marks, registered with the United States Patent and Trademark Office "through at least the e-commerce stores operating under the [e]-commerce [s]tore [n]ames" listed in Schedule "A", including in the Southern District of Florida. *Id.* at ¶¶ 2, 3, 17, 18, 26.

The Amended Complaint further asserts that Defendants' unlawful activities have caused, and will continue to cause, irreparable injury to Plaintiffs. *Id.* at ¶ 7. Specifically, Plaintiffs allege that:

> 8.     Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct

of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiffs' names and associated trademarks, and the destruction of the legitimate market sector in which they operate.

9.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary and other resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet has created an environment that require [sic] companies such as Plaintiffs to expend significant resources across a wide spectrum of efforts to protect both consumers and themselves from the confusion and erosion of the goodwill embodied in Plaintiffs' brands.

*Id.* at 8–9.

Plaintiffs moved for and obtained a Clerk's Default against all Defendants. [ECF Nos. 37; 38]. Plaintiffs now seek the entry of a default judgment in their favor and against Defendants, statutory damages, and the entry of a permanent injunction. [ECF No. 45].

## II.      Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if

they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D)

---

[1]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

### III.   Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

#### a.   Subject-Matter Jurisdiction

The Amended Complaint [ECF No. 18] alleges causes of action under the Lanham Act. Therefore, the Court has original subject-matter jurisdiction over the instant action. *See Ethos Grp., Inc. v. JAB Media, LLC*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4187097, at *2 (M.D. Fla. May 25, 2023), *report and recommendation adopted*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4181070 (M.D. Fla. June 26, 2023) ("Because this action arises under the Lanham Act, the Court has original subject-matter jurisdiction." (record citation omitted)). The Court also has supplemental jurisdiction over Plaintiffs' common law claims because they "are so related to" Plaintiffs' federal law claims "that they form part of the same case

or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Therefore, the Court has subject-matter jurisdiction over the instant action.

> **b.    Personal Jurisdiction**

In addition to subject-matter jurisdiction, a court must also have personal

jurisdiction over each defendant. "A judgment rendered in the absence of personal

jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL

8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335

(11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court

has an affirmative duty to evaluate whether it has personal jurisdiction over the

defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components:

amenability to jurisdiction and service of process. Amenability to jurisdiction means that

a defendant is within the substantive reach of a forum's jurisdiction under applicable law.

Service of process is simply the physical means by which that jurisdiction is asserted."

*Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation

omitted).

> **i.    Service of Process**

Service of process is a jurisdictional requirement. "Generally, where service of

process is insufficient, the court has no power to render judgment and the judgment is

void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiffs filed a motion seeking authorization for electronic service of process pursuant to Federal Rule of Civil Procedure 4(f)(3), which the Court granted. [ECF Nos. 7; 11].

The Court authorized Plaintiffs to serve Defendants as follows:

(a) [ ] Plaintiffs shall serve the Summons, Complaint, and all other pleadings, filings, and discovery upon Defendants in this action via e-mail by providing the address for the Plaintiffs' designated serving notice website to [ ] Defendants via the e-mail accounts provided by each Defendant (i) as part of the data related to its e-commerce store, including customer service e-mail addresses, onsite contact forms, and private messaging application or services, or (ii) via the e-commerce marketplace e-mail for each of the e-commerce stores; and

(b) [ ] Plaintiffs shall serve [ ] Defendants via website posting by posting a copy of the Summonses, Complaint, and all filings and discovery in this matter on the Plaintiffs' designated serving notice website appearing at the following URL: http://servingnotice.com/Dm3a0t4/index.html.

[ECF No. 11, p. 3].

The Court's Order further determined that:

Service by e-mail and website posting are[ ] reasonably calculated, under all circumstances, to apprise [ ] Defendants of the pending action and afford them an opportunity to respond. Moreover, these are the most likely means of communication to reach [ ] Defendants, who operate via the Internet and

rely on electronic communications for the operation of their businesses. *See Tiffany (NJ) LLC v. Dorapang Franchise Store*, No. 18-cv-61590, 2018 WL 4828430, at *3 (S.D. Fla. July 17, 2018) (Ungaro, J.).

*Id.* at 4.

Plaintiffs filed a proof of service indicating that Defendants were served via e-mail service and via website posting with seven documents, including the summonses and the Amended Complaint. [ECF Nos. 34; 34-1].

Because Plaintiffs complied with Judge Scola's Order [ECF No. 11] authorizing alternative service of process over Defendants, Plaintiffs have effectuated service of process on Defendants in the instant case. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, No. 21-23480-CIV, 2022 WL 17144227 (S.D. Fla. Nov. 22, 2022) (finding defendants have been "properly served . . . with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service"); *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff [had] properly effected service on [the] [d]efendants

pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

### ii.      Amenability to Jurisdiction

The Amended Complaint alleges "Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions[.]" [ECF No. 18, ¶ 10]. "The plaintiff has the burden of establishing a *prima facie case* of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a *prima facie* case of personal jurisdiction over non-resident defendants.").

In *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, this Court determined that it had "personal jurisdiction over the [d]efendants" because they had been served in accordance with the "Court's order authorizing alternative service" and:

> [the] [d]efendants directly target[ed] their business activities toward consumers in the United States, including Florida, and . . . [were] reaching out to do business with Florida residents by operating one or more commercial, interactive internet stores on internet marketplaces where Florida residents [could] purchase products bearing infringing and/or counterfeit trademarks belonging to the [p]laintiff.

No. 23-CV-21333, 2023 WL 3392684, at *2 (S.D. Fla. May 10, 2023).

Similarly here, the Amended Complaint alleges that:

> 10. . . . . Defendants target their business activities toward consumers throughout the United States, **including within this [D]istrict**, through the simultaneous operation of, at least, the commercial Internet based e-commerce stores under the [e]-commerce [s]tore [n]ames [listed in Schedule "A"].

***

> 13.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods each using counterfeits and infringements of one or more of Plaintiffs' trademarks to consumers within the United States and **this [D]istrict** through e-commerce stores using, at least, the [e]-commerce [s]tore [n]ames [listed in Schedule "A"] and additional e-commerce store names or aliases, not yet known to Plaintiffs. **Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State**.

[ECF No. 18, ¶¶ 10, 13 (emphasis added)].

Because "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact,"[2] these established facts provide a basis for this Court's personal jurisdiction over Defendants. *See TWOWS, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 823CV00139WFJMRM, 2023 WL 2837693, at *2 (M.D. Fla. Apr. 7, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has specific personal jurisdiction over the [d]efendants. [The] [d]efendants, alleged to be residing or operating in outside the United States, and are alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. § 48.193(1)(b).").[3]

In sum, Plaintiffs have demonstrated that this Court has both subject-matter and personal jurisdiction over Defendants.

---

[2]    *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

[3]    *See also*, *Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *2 (M.D. Fla. Feb. 14, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has personal jurisdiction over the [d]efendants, who are alleged to be residing or operating in the People's Republic of China, because the [d]efendants directly target their business activities toward consumers in the United States, including Florida. Specifically, [the] [p]laintiff has provided a basis to conclude that [the] [d]efendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more [s]eller [a]liases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold the same product that infringes directly and/or indirectly [the] [p]laintiff's patent-in-suit to residents of Florida.").

c.      Liability

As noted above, the Amended Complaint alleges trademark infringement and counterfeiting (Count I) and false designation of origin (Count II), pursuant to sections 32 and 43 of the Lanham Act, respectively. [ECF No. 18]. It also alleges claims for common law unfair competition (Count III) and trademark infringement (Count IV). *Id.*

"[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (quoting *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on Count I, Plaintiffs must show "(1) that [the] mark has priority and (2) that [ ] [D]efendants' mark is likely to cause consumer confusion." *Id.*

Plaintiffs have sufficiently alleged and established each of these elements: (1) Plaintiffs' ownership of the adidas Marks preceded Defendants' infringement; (2) Defendants are selling, offering for sale, and marketing products with the adidas Marks without Plaintiffs' consent or authorization; and (3) the marks used on the products Defendants are selling, offering for sale, and marketing are similar to Plaintiffs' adidas Marks that they are likely to cause consumer confusion. [ECF No. 18, ¶¶ 12–13, 26–28,

30–34, 43–46]. Accordingly, Plaintiffs are entitled to a default judgment on their Lanham Act trademark counterfeiting and infringement claim (Count I).

"The elements of a claim for false designation of origin are: '(1) that the plaintiff had enforceable trademark rights in the mark or name[ ] and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two.'" *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 247872, at *11 (S.D. Fla. Jan. 25, 2021) (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017)).

The test for liability for false designation of origin is the same as for trademark infringement and counterfeiting, whether the public is likely to be deceived or confused by the similarity of the subject marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As already noted, Plaintiffs' well-pled allegations establish their ownership of the adidas Marks and there is a likelihood of consumer confusion due to Defendants' use of those Marks. [ECF No. 18, ¶¶ 12–13, 26–28, 30–34, 50–53, 58–60, and 63–66]. Thus, Plaintiffs are entitled to a default judgment on their Lanham Act false designation of origin claim (Count II).

Plaintiffs have also alleged common law causes of action for unfair competition (Count III) and trademark infringement (Count IV). "[T]he Florida common law trademark infringement and unfair competition analysis is essentially the same as the

federal trademark infringement analysis." *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255-RAR, 2020 WL 6700449, at *2 (S.D. Fla. Oct. 20, 2020) (citing *Marine v. Black Fin Yacht Corp.*, No. 8:15-CV-1210-T-27AEP, 2016 WL 5106948, at *5 (M.D. Fla. Sept. 20, 2016)). Because Plaintiffs have shown they are entitled to a default judgment in their favor on their federal trademark infringement claim, they are also entitled to a default judgment in their favor on their common law trademark infringement and unfair competition claims.

Here, the well-pled allegations in the Amended Complaint, deemed admitted by virtue of Defendants' default,[4] establish Defendants' liability for each of the claims asserted. Moreover, the Amended Complaint's factual allegations have been substantiated by the sworn declaration of Mia Nidia Gutierrez, Plaintiffs' Brand Protection Manager. [ECF No. 45-2]. Therefore, Plaintiffs have shown that Defendants are liable for trademark infringement and counterfeiting under section 32 of the Lanham Act, false designation of origin under section 43 of the Lanham Act, common law unfair competition, and common law trademark infringement.

### d.    Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v.*

---

[4]    *Perez*, 774 F.3d at 1339.

*Compass Med. Centers Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed.1998)).

Here, Plaintiffs seek equitable relief and monetary (statutory) damages. As discussed below, Plaintiffs are entitled to the relief requested.

### i.     Injunctive Relief

Plaintiffs seek the issuance of a permanent injunction. [ECF No. 45, pp. 10–14]. The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury

caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted). Moreover, injunctive relief is available even in the default judgment setting[ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd.*, 2022 WL 1109849, at *4 (internal citation omitted).

To obtain a permanent injunction, Plaintiffs must show: (1) irreparable injury; (2) an inadequate remedy at law; (3) that the balance of hardships weigh in favor of issuing an injunction; and (4) the issuance of an injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

All four factors are met here. Plaintiffs have shown that Defendants are "promoting, advertising, distributing, offering for sale, and/or selling goods" using Plaintiffs' adidas Marks on "through at least the e-commerce stores operating under the [e]-commerce [s]tore [n]ames" listed in Schedule "A". [ECF No. 18, ¶¶ 2, 3, 26]. Therefore, consumers will continue to be confused by Defendants' unauthorized use of the adidas Marks. Additionally, so long as Defendants continue their infringing and counterfeiting activities, Plaintiffs lose their ability to control their Marks and will continue to suffer irreparable harm to their reputation and goodwill. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale

16

of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." (citation omitted)).

Plaintiffs have also shown no adequate remedy at law because monetary damages alone will not redress the harm to Plaintiffs from Defendants' infringement. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The] [p]laintiff has no adequate remedy at law so long as [the] [d]efendants continue to operate the [s]ubject [d]omain [n]ames and [s]eller IDs because [the] [p]laintiff cannot control the quality of what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to [the] [p]laintiff's reputation and goodwill that will result if [the] [d]efendants' infringing and counterfeiting actions are allowed to continue." (record citation omitted)).

The balance of harms also weighs in favor of issuing a permanent injunction. Plaintiffs' injury without an injunction outweighs the impact an injunction would have on Defendants. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264 (S.D. Fla. 2019) (finding that the balance of harms favored the issuance of a permanent injunction where "[the] [p]laintiff face[d] hardship from loss of sales and its inability to control its

reputation in the marketplace," whereas "[the] [d]efendants face[d] no hardship if they [were] prohibited from the infringement of [the] [p]laintiff's trademarks, which is an illegal act.").

Lastly, the public interest will not be disserved if the Court were to enjoin Defendants. "[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996));[5] *Mantua Mfg. Co. v. Irize Mattress, Inc.*, No. 20-25036-CIV, 2021 WL 3375837, at *5 (S.D. Fla. Feb. 24, 2021) ("The public interest is served by the entry of a permanent injunction in that further confusion and mistake by the public will be prevented.").

In sum, Plaintiffs have shown entitlement to permanent injunctive relief. Therefore, the Undersigned **respectfully recommends** that the District Court enter permanent injunctive relief consistent with the terms listed in paragraph 2(a)–(j) of Plaintiffs' proposed final default judgment and permanent injunction [ECF No. 45-1, pp. 2-4].

---

[5]     Although *Davidoff & CIE, S.A.* concerned the entry of a *preliminary* injunction and the instant motion seeks the issuance of a *permanent* injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

### ii.     Monetary (Statutory) Damages

The Lanham Act provides multiple remedies for violations of trademark law. In addition to injunctive relief, discussed *supra*, the Lanham Act permits a successful plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also allows for the court-ordered turnover of counterfeit items in a defendant's possession. 15 U.S.C. § 1118.

In certain instances, the Lanham Act provides for the recovery of statutory damages:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
>> (1) **not less than $1,000 or more than $200,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>>
>> (2) **if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).

"The Court has wide discretion to determine the amount of statutory damages."

*Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No.

21-CV-20744, 2022 WL 1109849, at *5 (S.D. Fla. Mar. 24, 2022), *report and recommendation*

*adopted sub nom. Animaccord Ltd. v. Individuals, P'ships, or Unincorporated Ass'ns Identified*

*on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (citing *PetMed*

*Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004)). The Court

may award statutory damages even in instances where a plaintiff cannot prove actual

damages caused by a defendant's infringement. *See ABS-CBN Corp. v. abscbn-teleserye.com*,

No. 17-61051-CIV, 2017 WL 6947726, at *8 (S.D. Fla. Dec. 27, 2017) (noting that "[a]n award

of statutory damages is appropriate, because statutory damages may be elected whether

or not there is adequate evidence of the actual damages suffered by [the] plaintiff or of

the profits reaped by the [d]efendant").

The amount of statutory damages awarded should be sufficient to compensate the

trademark owner *and* deter the defendant and others from infringing on that trademark.

*See Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-CIV, 2023 WL

3980245, at *7 (S.D. Fla. May 19, 2023), *report and recommendation adopted*, No. 22-23295-

CV, 2023 WL 3971175 (S.D. Fla. June 13, 2023) ("Statutory damages should serve the dual

purposes of compensating the plaintiff and sanctioning and deterring infringers." (citing

*PetMed Express*, 336 F. Supp. 2d at 1220-21)).

Here, Plaintiffs seek enhanced statutory damages based on Defendants' willful

conduct. [ECF No. 45, pp. 14–15]. They note that "[t]he adidas Marks are renowned

20

worldwide as identifiers of quality merchandise, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiffs' goodwill." *Id.* at 15.

> The infringement in the instant case was willful:
>
> A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" of a plaintiff's intellectual property rights. *Arista Records*, 298 F. Supp. 2d at 1312 (S.D. Fla. 2003). Willful infringement may be inferred where, as here, a defendant is willing to accept a default judgment. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla., Oct. 18, 2007).

*Sanrio Co. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *5 (S.D. Fla. Mar. 21, 2019).

The Undersigned **respectfully recommends** that the District Court award Plaintiffs the requested statutory damages amount of $100,000.00 against each Defendant. [ECF No. 45, p. 17].[6] This recommended statutory award will be sufficient to compensate Plaintiffs, punish Defendants, and deter them and others from continuing to counterfeit or otherwise infringe on Plaintiffs' trademark, consistent with the purpose of 15 U.S.C. §

---

[6] Plaintiffs explain that "[a]lthough [the] evidence demonstrates that many Defendants have counterfeited multiple trademarks, Plaintiffs are requesting a statutory damages award in the amount of $100,000.00 against each Defendant based upon each Defendant's use of at least one counterfeit mark on one type of good." [ECF No. 45, p. 17, n.8].

1117(c). *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (awarding $100,000.00 in statutory damages per defendant in willful infringement case).[7]

**IV.   Conclusion**

For the reasons stated above, the Court should **grant** Plaintiffs' motion [ECF No. 45], award $100,000.00 in statutory damages per Defendant (totaling $10,900,000.00), and issue a permanent injunction against Defendants.

Plaintiffs will provide a copy of this Report and Recommendations to Defendants in the same manner in which the Court authorized alternative service of process on Defendants. [ECF No. 11]. Plaintiff will file a notice of compliance on CM/ECF by no later than **Friday, December 15, 2023**.

**V.   Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge

---

[7]     As noted above, Plaintiffs' Amended Complaint alleges four causes of action. Plaintiffs' election of statutory damages is as to Count I. [ECF No. 45, p. 14]. Plaintiffs further state that the judgment on Counts II, III, and IV should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief. *Id.* at 18–19.

of an issue covered in the Report and shall bar the parties from attacking on appeal

unobjected-to factual and legal conclusions contained in this Report except upon grounds

of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*,

474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R.

3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on

December 7, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Robert N. Scola, Jr.
All Counsel of Record